The first case to be argued is Harris v. Fouke. Good morning. Oh, Fouke. Fouke? Good morning, Your Honors. May it please the Court? I'm Philip Trevino on behalf of the petitioner appellant. And if I may just draw to the Court's attention the pendency of the petitioner's Rule 201 motion for judicial notice. That is the motion that conveyed several particular materials. The statistics that the California Board of Hearings produces on its website, as well as several newspaper articles, both from the Los Angeles and San Francisco area, that cast, I think, significant light on what a reasonable due amount of diligence would be that an individual in a petitioner's situation might or perhaps should be required to undertake. And specifically, it's our position that due diligence in this instance, where essentially nobody with a life sentence was being admitted to parole, did not mean that the petitioner had no real reason to go to the 2005 hearing that was set initially. Is this the Court mentioned that the caption of the hearing was in re lifetime parole? Am I getting that right? Your Honor, it is in re life. I'm sorry? The kind of style of the hearing, if memory serves, starts out in re life sentence. In re life sentence. There we go. So he would not have, your client would not have had to have gone to the actual hearing. All he would have had to do is see the notice. But the notice, Your Honor, I'd have to submit, could equally be interpreted and very logically be interpreted to reference the life sentence that my client received. Well, actually, it couldn't. It says the 2005 proceeding was styled in the matter of lifetime parole consideration. But, Your Honor, if I may, the life term could have reference to the life imprisonment term that was imposed upon my client. Your Honor's interpretation, if I take the point from the Court correctly, is one of the two plausible interpretations. But for my client, a layperson, I don't know that it's – it would not be our position that it would be a basis to put any weight on for this Court in its making its decision as to whether or not he was on notice. It seems clear from my client's actions that at least on a subjective level, when he learned of this for the first time in 2010 and took his administrative remedy, he clearly wasn't on notice. I understand that even if the Court felt, as the district court did, that somehow the style that was afforded to that hearing should have conveyed some information to my client. The reality is it didn't. And I don't know whether the fact that he just failed to read it the way the Court may choose to read it means that that justifies an equation with reasonable or due diligence. Respectfully, I urge the Court to conclude that it doesn't. Well, I'm just curious whether the Court, the trial court, could have even lawfully imposed a 5-year term of parole. I guess that's a question for the trial court. For the trial court itself, the State trial court, Your Honor. Wouldn't his counsel be aware that the law would not allow a 5-year term of parole? I don't know whether, in fact, the defense attorney or the prosecutor was aware, but as far as the record that we have shows, they made no mention of it. It would seem a fair reading from the record is that all three of the parties, the trial counsel, that is the district attorney, and the defense attorney, and the presiding judge, all believed this was a lawful sentence. Maybe there was some subterfuge, but I don't know that we have anything in front of us to suggest that. It seems like it's just simply an honest mistake. But it was a mistake to my client's detriment. And it may well be that the State trial court could not lawfully have imposed that sentence. But that's where my client's allegations to the effect that this was important to him becomes core. Because if, in fact, he had been accurately informed as to the state of the law, then we have the question, well, would he have accepted the plea offer that was offered to him? And I'm not in a position to answer. Our record doesn't disclose. What it discloses is it was important to him. Quite independent as to whether or not the caption should have notified him that he had actually been sentenced to a lifetime parole, and quite independent as to whether he had an obligation to attend the first hearing with respect to tolling. Did he have any obligation during the period in question, which is quite a long period, did he have an independent obligation simply to investigate his sentence, what it was? Because if he had undertaken the investigation, he clearly could have found it out. Well, I'm not sure that I could agree with the court that he clearly could have found it out. Perhaps he could have. I'm not sure that as a layperson he could have necessarily sifted through any materials that he might have received from the CDC in response to an inquiry. But your prior question, Your Honor, I think is the more important one, and that is whether or not he had a duty or a responsibility to do it. That's my question. And I don't believe that he did, Your Honor. Because? Because he was told by the presiding judge who imposed sentence on him what the sentence was that he was receiving. What's the California law on the point? Our law is that the oral pronouncement of sentencing governs. What's the California law? I'm sorry, Your Honor, I don't know if there's a difference between the Federal law and the California state law on that point. I know that the state sentence, the pronouncement of sentence, didn't address this point. And in terms of focusing it back on the due diligence, of course, we turned, I respect it, I would urge the Court to turn to the advisement given at the change of plea, which was that it would be the 5-year parole term. What did he ask the superior court? As soon as he found out he went to the superior court. As soon as he found out of the discrepancy. He said he found out the. First he took an administrative appeal. He thought it was an error in the California Department of Corrections. Right. And then it was pointed out to him. They sent him a copy of the statute. Right. And at that point he goes to the superior court. Superior court. He began a series of state habeas in the California state court system. Yes, Your Honor. Each seeking to invalidate this based on the same premise that we're here today. He was seeking to invalidate the, to set aside the plea or to conform the. I'm following up on Judge Fletcher's question. Or was he trying to get the benefit of his bargain by having the sentence? He was, he styled his claims in different fashions, but alleging IEC as to his trial counsel's failure to correct this. I'm sorry, I didn't hear you. He styled his claims in a number of fashions. Your Honor, he propounded several different claims, starting, for example, with that trial counsel to fail to correct the erroneous statement the trial court made. Also, that he had been deprived of due process and that he wasn't given the benefits of the plea he believed he struck. Whether or not the remedy that could be fashioned would need to be a vacation of the conviction or whether it could be simply an enforcement of the plea bargain, I think that would have to leave to a lower court to determine. Probably the state court. Probably the state court. Yes, Your Honor. Didn't he actually argue that he would not have entered into the plea if he had known that it was a life term of parole? He did, Your Honor. Yes. All right. And the court of appeal, or the superior court, rejected that, saying that's wholly unbelievable. They did make that finding, Your Honor, and I respectfully urge this court to differ with that. I don't believe that there's any basis for the state court to have made that finding. Does it matter? I think it does matter in the sense that the evidence that I've... I just thought you said it doesn't matter. Whether or not he believed it important, my client's clear position on the record before all the courts... I mean, he was informed of something, and the sentence imposed was different. Maybe I'm misunderstanding the court, Your Honor. I apologize. Does he have to have been actually fooled by it? To have been fooled by what, Your Honor? I mean, does he have to have been, you know, mistakenly believed what the court said, or is it just a matter of the court said that's what the sentence is? I don't think there's any reason for us to believe that he held any separate belief from what the court told him, that that is what he was... So I was asking, does it matter whether he did or not? No, I don't think it does, but I... I think at the moment, the two of you are ships in the night, meaning he's saying I would not have accepted the plea bargain had I known it was lifetime parole, which means it clearly mattered. Yes, it did clearly matter, and he has stated that in a number of different fora consistently. And the state court says that's not believable. That's correct, and I'd urge this court to disregard that finding from the state court, simply because there's no basis to substantiate it. And in particular, again, I bring us back to the focus of the Rule 201 motion. There's every reason for this court to find reasonable and diligent my client's actual reality. And I see my time is almost terminated. Can I just ask, sort of a kind of practical, factual question that's not in the record, but has he had subsequent parole hearings? I'm sorry, Your Honor, our record doesn't tell us. My suspicion would be that he has not, however, since they were to have been calendared every five years, and the first was 2005, and then 2010 is when the problem was first brought to his attention, and of course, as we only now begin 2015, I assume that's true. How many years? So he was sentenced to 26 years to life. How many years has he been? My recollection is the imposition was made in 1990, if memory serves. So we're coming close to term for him, but he's not quite there yet. Okay. Thank you, Your Honors. Thank you, counsel. Okay. Good morning, Your Honors. May it please the Court. Deputy Attorney General Charles Lee on behalf of the Respondent. Your Honors, the statute of limitations in this case began running no later than October 6, 2005, the date of Mr. Harris' first parole hearing. Because if he had been even remotely diligent, he would have attended the hearing. Diligent means what? I mean, you know, was there anything about if he's not interested in getting parole, why would he attend? Was there anything about the parole hearing where they said, oh, by the way, if you attend, you're going to find out whether your sentence is correct? Not necessarily, Your Honor, but... So why is it lack of diligence for him not to attend the parole hearing? He's not told he would find out anything. He doesn't have any reason to suspect there's anything to find out, and he doesn't want to bother going when he knows there's no chance. I don't know how you can call that a lack of diligence. Your Honor, because the very fact that he was on parole should have been enough motivation for him to attend a hearing. Why? Regardless of whether he... If he thinks he has no chance of getting parole, why would that... I mean, it's one thing to say, look, you knew you were injured, you had time to figure out the nature of the injury, but this is a proceeding in which he would incidentally perhaps have found out about the length of the parole hearing, but there's nothing about the proceeding itself that put him on notice that there was anything for him to find out. Well, I think there's two reasons, Your Honor. The first reason is that a reasonable person in that situation would have attended a hearing because the very fact that he was eligible for parole should have been a motivating factor. Well, wait a minute. Let's take his position at face value, and I think it's perfectly plausible. He knew, we all knew, we all know, that he wasn't going to get parole at that time. So you say he should have gone anyway because why? Assume for the moment that he knew, and he knew accurately, what he knew was true, that it was a futile endeavor. So why did he have to go? Because I think parole is an ongoing process. It's a work in progress. So, you know, even if he did believe he had a chance in 2005 to be released on parole, he still had upcoming hearings in 2010, probably 2015, maybe 2020. So anything that he learns while preparing for the first parole hearing could only help him in the future. And we're not even saying that he had to. So he would have been diligent in getting parole. You say he would have gotten some practice session. But what does it have to do with the question of the length of his parole? Well, I think the key point here is that anything he would have found out about the length of his parole was available in his prison file. It was in his legal status summary inside the prison file. So even if he … But how does he know that? I think … How does he know that if he goes to the parole hearing and gets to look at his prison file and that that information would be in there? He doesn't necessarily have to know that the information would have been in there. But he, diligent, should have required him to attend a hearing or at least review the information in order to prepare for that first hearing or for future hearings. As I said … Do you dispute that the first time Harris learned that he had lifetime parole instead of five-year parole was when he went to the second parole hearing? No, I don't dispute that, Your Honor. Okay. But what I'm saying is that if he had attended the first hearing … Let me put it to you a different way. I mean, what would be his reason for not pursuing it? I mean, is he sort of hoping to spend more time in prison? I mean, this is the kind of thing where if he had any reason to suspect that this was … that what he was told in court was wrong, the sooner he found out about it, the better off he'd be. So it's not like he shut his eyes to it. Right. And I agree with you, Your Honor. But even if he didn't suspect that he would find anything wrong with his parole term at the hearing, the very fact that he was up for parole should have motivated him to attend the hearing or at the very least review his parole file or his prison file. Because as I mentioned earlier … Well, let's say the prison had had a program to educate prisoners in constitutional law. Right. And it turns out that people who attended that program would have had as one of their exercises examine your own record and, you know, build constitutional arguments about the adequacy of your conviction. Right. And let's say that would he have been sort of not diligent by failing to take the program because somewhere along the way he would have found out … he would have had a reason to at his conviction file? I think that's a different situation, Your Honor, because … Of course it's a different situation. You think you're the first one to have said that? You know, we hear this several times a day. Right. Of course it's a different situation. That's why I'm asking the question. So assuming it's a different situation, answer my question. I think he would not have … diligence would not have required him to attend the program. Why not? Because diligence requires a petition to pursue his rights when there's an opportunity. He has a right to attend the program. Right. But I would say that it would depend on the degree of rights as well. So attending a program … Degree of rights? Right. He has a right to attend the program, educational program, and it might do him good. You know, maybe he attends the educational program. It might improve his chances for parole because he shows that he, you know, he's educated himself, and he might attend the parole hearing. In fact, it may be that the educational program would help him more in getting parole than going to a futile parole hearing. So why? How are the two things different? So you say they are a different case. How are they different? You agree with me, do you not, that not attending the educational program would not be lack of diligence? I do agree with that. Yes. It would not be lack of diligence. Okay. So tell me now how they are different, since you were so anxious to tell me it's a different case. Well, because parole involves a right for a prisoner to be released. He's pursuing a right to be released from prison when he's attending his parole hearing. Okay. So I will change this somewhat. Let's say you get sort of prison credits that sort of go towards your profile within and help you get early release, and he doesn't take advantage of that program. Would that … I think it is possible that he would not be diligent in that situation. I do agree, Your Honor. But he has to take every program that's available in prison because somehow something like that might reveal to him something, a fact about an issue that he has no awareness of exists out there, right? He doesn't necessarily have to take every program out there, and I think there may be a line that can be drawn between what situation … Go ahead. Go ahead and draw it. Right. Well, I'm not sure what the line is exactly, Your Honor, but I know that if the situation is he's up for parole and has a chance to be released from prison … But he doesn't. … on that side. He doesn't. He knows, and the parole board knows, and the prison authorities know, and everybody in California knows, you don't get parole the first time out, particularly since he had many more years left to serve on his minimum sentence, right? That's true, Your Honor. But even if he believes that's the case, he should have at least reviewed his parole file or his prison file, not because he expected to find anything about the length of his parole term, but because he wanted … he would need to prepare for future hearings, for example, to make sure that the record is accurate. I don't know. I don't know what reason he would have to suspect that what the oral pronouncement was by the trial judge was wrong. I would think everything would go the other way, that you would believe what the trial judge had told you in open court. Right. And I understand, Your Honor, but I would say that even if he had no reason to believe that the trial judge was wrong, even if he had no reason to suspect that he was subject to lifetime parole, he still … Can I ask you another question? Yes. I'm sorry. It's a question that Judge Fletcher also asked of Harris' attorney, Mr. Trevino. What is the law in California when you have an oral pronouncement that differs from, say, the written judgment? What prevails? I admit I am not certain, Your Honor. Isn't that important in this case? Well, I think based on the record, there really wasn't a difference. According to Mr. Harris, he never received a written pronouncement until 2010. No, no. But there was one. He didn't receive it. Right. So he heard something in oral court by an authoritative source, i.e., the judge, that said once you get parole, it's five years. Right. The judgment in writing says parole for the rest of your life. Right. He doesn't get it, but it's there. That's true, Your Honor. So the question is, and I'm just repeating Judge Wardlaw's question, and I think your answer is you don't know … Yes. … which one controls. I'm not sure which one controls, Your Honor. But I would say that under D1D, it's when he found out or could have found out. Well, you don't know the answer to that question, so let me ask you another question. Let's say you have not persuaded us that failing to attend the parole hearing was short lag of diligence. I'm not saying you haven't, but let's say you haven't. Do you have another argument beyond that? Do you have a second argument? Yes. I would just say that the failure to review the prison file, even if he didn't want to attend the 2005 hearing, he still had access to the prison file. And what reason would he have had to review the prison file? Because anything he learns in 2005 can only help him in future parole hearings. If there was a mistake in his record, for example, if there was a mistake in rules violation in his record, if he found that out in 2005 … He says, I'll wait and look at it. When I am up for parole hearing, I'll review it. A meaningful parole hearing, I'll review it, and at that point I can get it. Did he have, other than this idea of the parole hearing, would he have had any reason to review his prison file? Not. He wouldn't have a reason to necessarily review his prison file. Other than sort of suspicion that, gee, maybe what the judge told me was wrong. Right. But I would say that the parole hearing itself should have been sufficient reason. I understand. But let's say we don't buy that. Let's say you don't persuade us that the parole hearing was enough of a trigger. Was there some other reason he would have had that he lacked diligence for failing to review the prison file? I would just say that the very fact that the parole term was important to him should have given him pause to review the prison file. Because at the very least, he should have reviewed whether the terms of his plea agreement was correct. And remember, he claims that the parole term was so important to him that he would have preferred to face 40 years in prison instead of taking a 26 years to life deal. Well, but that's true of a sentence, too. If the judge says you are in prison to 2 years in prison and the clerk writes down 20, you know, presumably prisoners care very much about how long they spend in prison, but you're not saying as a general matter they have a responsibility to review the prison file to make sure that there wasn't a scrivener's error in there. You're not saying that, are you? I think there may be a general responsibility to make sure that to conduct an initial investigation or a basic investigation. So this applies to all prisoners. There's nothing special about Mr. Harris, right? Right. I think all prisoners would have. That's right. That all prisoners have a responsibility to double check the second guess of the judge, so whatever the judge tells them, and even if the lawyer doesn't tell him the judge made a mistake, they have a responsibility to review their, the judgment of conviction. Right. To review their case and at least review the basic facts such as, you know, judgment of conviction. And in this case, since it was important to him the length of the parole term. Do you have any authority about this or is it just your personal view? I think this is just based on my understanding of reasonableness. But I would say that regardless of whether he had an overarching duty to review the parole term, that duty certainly came up when he actually became eligible for parole. And the duty itself comes from the fact that he should have. He had all the information he needed in front of him. And the very fact. I think we understand your position. Thank you, Your Honor. Thank you. I think we have a little time left. Maybe there were negative minutes. Would you like to take a minute? Thank you, Your Honor. Primarily just to see if I can answer any questions that the Court may have. Well, this is just on timeliness and there's nothing on the merits yet. That's correct, Your Honor. That was the way that this Court framed the Certificate of Appealability, just as to the timeliness under 2244. And if I may then just conclude by observing for the Court's benefit that once my client did become aware of this, I think he does demonstrate what this Court might appreciate as an exemplary record in an attempt to pursue his remedies. He is not a litigant who, under habeas, dallied in the way that he presented his California state habeases or the way in which he transitioned into the federal system. Once he became aware of this, it seems to me he's a very good model of diligence. So this really does turn on this Court's determination whether he had some duty to do some investigation earlier. Thank you. Thank you. The case is argued. We'll see you in a few minutes.
judges: Kozinski, Wardlaw, Fletcher